# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 8200 | DATE | APRIL 25 , 2002 |
| CASE TITLE | LAWRENCE W. BAHNAMAN, et al. v. LUCENT TECHNOLOGIES, INC., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion for summary judgment [16-1] is denied. Defendants' motion for summary judgment [13-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing plaintiffs' causes of action with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | APR 2 6 2002 | |
| | Notified counsel by telephone. | | | date docketed | 3 |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | APRIL 25, 2002 | |
| cw | courtroom deputy's initials | | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAWRENCE W. BAHNAMAN, RICHARD      )
BANKS, CARROL G. FRANCO, FRANCIS   )
OLINGER, GERALD C. PAGE, WAYNE     )
PAE, and EUGENE R. SESSA,          )
                                   )
            Plaintiffs,            )
                                   )
     v.                            )      No. 00 C 8200
                                   )
LUCENT TECHNOLOGIES, INC. and      )
LUCENT TECHNOLOGIES, INC.          )
MANAGEMENT PENSION PLAN,           )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lawrence Bahnaman, Richard Banks, Carrol
Franco, Francis Olinger, Gerald Page, Wayne Pae, and Eugene Sessa
are seven former employees of defendant Lucent Technologies, Inc.
("Lucent"), all of whom retired in 1997.  Each plaintiff was a
long-time employee of Lucent who had worked in management
positions for a number of years.  All had participated in
defendant Lucent Technologies, Inc. Management Pension Plan
("LTMPP"), for which Lucent is the administrator.  Prior to
retirement, each plaintiff elected to participate in Lucent's
Voluntary Termination Pay Offer ("VTP"), which provided a lump



sum termination payment--ranging between $75,600 and $93,600 for plaintiffs--separate from any accrued retirement service pension benefits for which the retiree may have qualified. In August 1997, Lucent announced the LTMPP would be amended effective January 1, 1998 (the "1998 Plan"). The amendment provided a Transition Formula ("TF") for calculating retirement benefits for those persons who retired during 1997 and were eligible for pension benefits under specified provisions of the prior plan (the "1996 Plan") as of the date employment terminated. Under the TF, each plaintiff would have received a larger monthly pension benefit--ranging between a $3,040 and $10,238 annual increase for plaintiffs--than under the 1996 Plan in effect when they actually retired. Each plaintiff applied for TF benefits and was denied such benefits. The LTMPP found that, by electing the VTP, plaintiffs were transferred to nonmanagement, occupational positions on their last day of employment and therefore were receiving monthly pension benefits under the Lucent Technologies Inc. Pension Plan ("LTPP"), not the LTMPP. TF benefits were denied on the ground that, as of the date of retirement, plaintiffs were not management employees participating in the LTMPP. After exhausting their administrative remedies, plaintiffs brought the present lawsuit claiming that TF benefits were denied in violation of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1001 <u>et seq.</u>  Presently pending are the parties' cross motions

for summary judgment.

The complaint contains two counts.  Count I is

denominated as a claim for denial of benefits.  <u>See</u> 29 U.S.C.

§ 1132(a)(1)(B).  Count II is denominated as a claim for breach

of fiduciary duty.  In response to defendants' motion for summary

judgment, plaintiffs have voluntarily withdrawn Count II.

Although not raised by Lucent, Lucent is not a proper defendant

to the Count I claim.  In this circuit, a claim for denial of

benefits may only be brought against the benefit plan itself,

not the administrator of the plan or an employer that establishes

a plan.  <u>Jass v. Prudential Health Care Plan, Inc.</u>, 88 F.3d 1482,

1490 (7th Cir. 1996); <u>Sisto v. SBC Ameritech</u>, 2002 WL 448993

*2 (N.D. Ill. March 22, 2002); <u>Hupp v. Experian Corp.</u>, 108

F. Supp. 2d 1008, 1013 (N.D. Ill. 2000); <u>Fortmann v. Avon</u>

<u>Products, Inc.</u>, 1999 WL 160258 *4 (N.D. Ill. March 9, 1999);

<u>Anderson v. Illinois Bell Telephone Co.</u>, 961 F. Supp. 1208,

1212-13 (N.D. Ill. 1997).  <u>See also</u> <u>Gelardi v. Pertec Computer</u>

<u>Corp.</u>, 761 F.2d 1323, 1324 (9th Cir. 1985).  <u>But compare</u>

<u>Everhart v. Allmerica Financial Life Insurance Co.</u>, 275 F.3d

751, 754 (9th Cir. 2001) (noting split of authority among the

circuits).  Moreover, even if a claim for denial of benefits

could also be brought against Lucent, the LTMPP's presence in the

case is sufficient for plaintiffs to obtain all possible relief.

See <u>Fortmann</u>, 1999 WL 160258 at *4.  Lucent will be dismissed from this action and this opinion will henceforth refer to a single defendant, the LTMPP.

Plaintiffs contend that their eligibility for TF benefits is subject to <u>de novo</u> review.  However, even if subject to deferential review, plaintiffs contend defendant's construction of the LTMPP and other pertinent documents was arbitrary and capricious.  Plaintiffs contend they were not effectively transferred to occupational positions or the LTPP prior to retirement and remained eligible for benefits under the LTMPP. Alternatively, plaintiffs contend defendant did not provide an adequate hearing.  Defendant contends it has discretionary authority to rule on all issues related to plaintiffs' qualification for TF benefits and therefore its decision is subject to arbitrary and capricious review only.  Regardless of the standard of review, defendant contends its decision was fully consistent with the applicable documents.  It also contends that plaintiffs waived certain arguments by failing to raise them in the administrative proceedings and that it provided an adequate hearing.  The underlying facts generally are not in dispute, only the legal effect of the underlying facts.

The Lucent Employee Benefit Committee ("EBC") makes benefit determinations for both the LTMPP and LTPP.  Section 3.4

of the 1998 Plan provides:

> The Committee shall be the final review
> committee under the Plan, with the authority to
> determine conclusively for all parties any and
> all questions arising from the administration of
> the Plan, and shall have sole and complete
> discretionary authority and control to manage the
> operation and administration of the Plan,
> including but not limited to, the determination
> of all questions relating to eligibility for
> participation and benefits, interpretation of all
> Plan provisions, determination of the amount and
> kind of benefits payable to any Participant,
> Lawful Spouse or beneficiary, and construction of
> disputed or doubtful terms.  Such decisions shall
> be conclusive and binding on all parties and not
> subject to further review.

The 1996 Plan that was in effect when plaintiffs retired had an
essentially identical version, as does the LTPP.[1]

Plaintiffs contend that, in making a decision as to LTMPP
benefits, this provision does not accord the EBC discretion in
construing VTP, LTPP, or collective bargaining agreement
provisions, nor the discretion to defer to Lucent classifications
of employees.  Section 3.4, however, is broadly written.  It
refers to "complete discretionary authority" not limited to the
specifically listed subjects.  Moreover, it expressly refers to
"the determination of all questions relating to eligibility for
participation and benefits."  The issue raised in plaintiffs'

---

[1]The only difference in those versions is capitalization
of some terms and use of the term "spouse" instead of "Lawful
Spouse."

complaint is their eligibility for participation and benefits.
"[A]ll questions relating" thereto is broad authority without
limit.  See Jannotta v. Subway Sandwich Shops, Inc., 225 F.3d
815, 818 (7th Cir. 2000) ("relative to," as used in a lease, is a
"broad phrase").  See also Jannotta v. Subway Sandwich Shops,
Inc., 1999 WL 184396 *2-3 (N.D. Ill. March 29, 1999), aff'd, id.
(collecting cases broadly construing the term "relating to" and
similar variations of the word "related").  Issues as to
plaintiffs' job classifications and the effects of the VTP
elections were "questions relating to eligibility for
participation and benefits" for which the EBC had complete
discretionary authority.

Because the EBC had discretion in making the
determinations as to plaintiffs' eligibility for TF benefits, the
denial of those benefits is subject to arbitrary and capricious
review.  Hess v. Hartford Life & Accident Insurance Co., 274 F.3d
456, 461 (7th Cir. 2001).

> This is, of course, a deferential standard of
> review.  Under the arbitrary and capricious
> standard, a plan administrator's decision should
> not be overturned as long as (1) "it is possible
> to offer a reasoned explanation, based on the
> evidence, for a particular outcome," (2) the
> decision "is based on a reasonable explanation
> of relevant plan documents," or (3) the
> administrator "has based its decision on a
> consideration of the relevant factors that
> encompass the important aspects of the problem."
> Exbom v. Central States, Southeast and Southwest
> Areas Health and Welfare Fund, 900 F.2d 1138,

> 1142-43 (7th Cir. 1990) (citations omitted).
> Nevertheless, "[d]eferential review is not no
> review," and "deference need not be abject."
> Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir.
> 1996).  In some cases, the plain language or
> structure of the plan or simple common sense will
> require the court to pronounce an administrator's
> determination arbitrary and capricious.  Id.

Id.

Before bringing a lawsuit regarding the denial of

benefits, a plan participant generally must first exhaust his or

her administrative remedies.  Gallegos v. Mt. Sinai Medical

Center, 210 F.3d 803, 807-08 (7th Cir.), cert. denied, 531 U.S.

827 (2000); Ames v. American National Can Co., 170 F.3d 751, 756-

57 (7th Cir. 1999).  Claims may be waived if not first presented

in administrative proceedings.  See Lindemann v. Mobil Oil Corp.,

79 F.3d 647, 649 (7th Cir. 1996); Doyle v. Local 25, SEIU, 1999

WL 1044206 *8 (N.D. Ill. Nov. 9, 1999).  However, a plan

participant need only exhaust claims, not theories or issues.  As

long as he or she has presented the claim to the administrative

reviewing body, the participant may raise any theory or issue as

to the reviewing body's decision being arbitrary and capricious.

Taylor v. Continental Group Change in Control Severance Pay Plan,

933 F.2d 1227, 1235-36 (3d Cir. 1991); Wolf v. National Shopmen

Pension Fund, 728 F.2d 182, 186 (3d Cir. 1984); Crimmins v. Arco

Chemical Co., 1999 WL 199750 *6-7 (E.D. Pa. April 7, 1999).  See

also Doyle, 1999 WL 1044206 at *8 (final decision by plan setting

forth its ground for denial of benefits was necessary before participant could formulate argument he raised in court). Cf. Gallo v. Amoco Corp., 102 F.3d 918, 923 (7th Cir. 1996), cert. denied, 521 U.S. 1179 (1997) ("When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality. He cannot augment the administrative record with new facts bearing upon the application for benefits . . ., but he is not limited to repeating what he told the applicant."). However, a theory or issue raised in court proceedings must be based on evidence or information that was before the reviewing body. Hess, 274 F.3d at 462; Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan, 195 F.3d 975, 982 (7th Cir. 1999).

Here, there is no dispute that each plaintiff exhausted his administrative remedies. Instead, defendant contends that some of the arguments presently raised are waived because not specifically raised before the EBC. There is no dispute that each plaintiff raised before the EBC that he or she was eligible for TF benefits. Each plaintiff repeats that claim in this court and there is no indication that any facts presently relied upon were not before the EBC. LTMPP, LTPP, and collective bargaining agreement provisions that may not have been specifically cited in plaintiffs' appeal letter before the EBC are not new facts that were not in the record before the EBC and may be cited here in

direct response to the EBC's reasoning in denying benefits. It
is not found that plaintiffs have waived any argument by failing
to raise it before the EBC.

Occupational employees in the Business Communications
Systems ("BCS") units of Lucent generally were supervised by
Foremen. The Foremen reported to General Foremen. During the
pertinent time period, Lucent and the International Brotherhood
of Electrical Workers had a collective bargaining agreement (the
"CBA") that covered certain BCS occupational employees. As part
of the CBA, there was an agreement with Local 134 in the Chicago
area regarding supervisors of certain specified BCS occupational
employees, including supervisors of Customer Systems Engineers.
This provision did not apply to employees in any other Local.
Under the Local 134 agreement, persons promoted to Foreman and
General Foreman had to have been members in good standing in
Local 134 and remain so during their tenure in those positions.
All the plaintiffs were in such supervisory or management
positions.[2] The CBA's application to these managers, however,
was limited to a few specific provisions of the CBA. The parties
agree that being a member in good standing is not the same as
being represented by Local 134 and they agree that none of the

---

[2]Plaintiff Pae's job title was Staff Manager, but the
same provision apparently applied to him as well.

plaintiffs were represented by Local 134 while in their
management positions.

Effective December 2, 1996, Lucent made the VTP offer
available to Customer Systems Engineers where a formal surplus
declaration had been made. Such a surplus was declared for Local
134 Customer Systems Engineers. Employees had until December 31,
1996 to elect the offer. As written, the offer was limited to
those in the occupational position of Customer Systems Engineer.
In the past, management employees had been permitted to return to
occupational positions so that they could participate in
incentive offers for voluntary termination. The parties do not
dispute that Lucent and Local 134 agreed to extend the VTP to
managers who were members of Local 134 and supervised Customer
Systems Engineers. This additional agreement and offer
apparently was oral and the parties do not provide the specific
terms of the agreement.[3] There was no additional written VTP

_____

[3]The CBA provisions applicable to Local 134 management
members include the following provision: "Management employees
represented by Local 134 in the titles of Foreman and General
Foreman may be declared surplus without regard to seniority.
However, such employees, who were previously promoted to the
title of Foreman or General Foreman from the title of Journeyman,
may exercise the right to return to a Journeyman position and
assume a seniority position as a Journeyman in the bargaining
unit at the time the surplus is declared." This provision did
not apply to plaintiffs electing the VTP offer because they were
not represented by Local 134 and no surplus of Foremen or General
Foremen was declared. Also, no plaintiff formally exercised his
or her right to return to an occupational position.

offer other than the initial announcement which is stated to be
limited to Customer Systems Engineers.

Bahnaman, Banks, Page, Sessa, and Pae all testified at
their depositions that they understood that, in order to
participate in the VTP offer, they would be required to transfer
to occupational positions before retiring.  Although they state
otherwise in their summary judgment affidavits, no genuine
factual dispute is supported by an affidavit that, without
sufficient explanation, contradicts prior deposition testimony.
Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532-33 (7th Cir.
1999); Patterson v. Chicago Association for Retarded Citizens,
150 F.3d 719, 724 (7th Cir. 1998).  As to Franco and Olinger,
defendant points to no testimony that they knew beforehand that
they needed to be transferred to an occupation position in order
to elect the VTP.  As to these two plaintiffs, their
uncontradicted affidavit testimony is accepted that they were not
told in advance that their acceptance of the VTP offer was
conditioned on their returning to an occupational position.  On
each of their VTP election forms, plaintiffs identified
themselves as management employees.

Although Lucent's personnel department prepared employee
change notices transferring each plaintiff to an occupational
position on his or her last day of employment, these forms did
not have to be signed by or provided to the employees.  Also,

none of the plaintiffs actually performed occupational work on
the last official day of work; each either continued to perform
management functions or was on vacation that date.  Additionally,
prior to retirement, no employee was informed that electing the
VTP or transferring to an occupational position would result in
being switched from the LTMPP to the LTPP.  Neither did any
employee make any specific inquiry resulting in being expressly
informed that there would be no effect.  However, all the pension
documents provided for plaintiffs to complete were for the LTMPP,
not the LTPP, and each plaintiff received a preliminary pension
benefits calculation for LTMPP benefits.  Plaintiffs do not
dispute that the LTMPP and its summary plan description were
available for them to consider possibly pertinent provisions of
the LTMPP.  Four of the plaintiffs (Bahnaman, Banks, Page, and
Franco) initially received monthly pension payments from the
LTMPP.  The administrator later decided that this was an error
and the payments were redesignated as LTPP payments.  The LTPP
provided plaintiffs with full credit for their time under the
LTMPP and incorporated LTMPP provisions in the benefits
calculation applicable to plaintiffs.  Prior to institution of
the TF, the only difference between the two plans regarding
plaintiffs' benefits calculations was a miniscule decrease
resulting from one day of work (the last date of employment)
being credited as LTPP time at the lower pay scale of an

occupational employee instead of as LTMPP time at a manager's salary.  See LTPP § 4.2(f).

For a service pension under the 1998 Plan, there is one eligibility provision for those who terminate employment on or after January 1, 1998 (1998 Plan § 4.1(a)(i)) and another for those who terminated employment before 1998 (id. § 4.1(a)(ii)). The latter provides:  "Each Participant who Terminates Employment and [has reached an age and length of service requirement] shall be eligible to receive a service pension which shall be the greater of the Prior Plan Benefit or the benefit calculated under the provisions of Section 4.2(b) (transition benefit)."  Id. (emphasis added).

The 1998 Plan also provides:

> Notwithstanding anything to the contrary in this Section 4.2(b), the monthly pension benefit of each Participant who Terminates Employment on or after January 1, 1997 and before January 1, 1998 and is eligible for a pension under the provisions of Section 4.1(a) or 4.1(c) of the Prior Plan on the date employment terminates shall be recalculated as of the date of the Participant's Termination of Employment under the monthly benefit formula provided in Section 4.2(b)(ii)(B) of this Plan. . . .

1998 Plan § 4.2(b)(iii) (emphasis added).

Section 2.29 of the 1998 Plan defines a Participant as "Any Employee who has attained age 21, whose Years of Service are

one year or more and who is employed by a Participating Company."

"Employee" is defined as:

>           Any individual . . . who receives a regular
> and stated Compensation, other than a pension or
> retainer, from a Participating Company, and who
> is a Salaried Employee other than:
>                          * * *
>           (ii) a salaried graded employee, or,
>                          * * *
>           (iv) an employee who is an active
> participant in another Qualified Pension Plan, or
>           (v) an employee in a bargaining unit
> represented by a union, or . . . .

1998 Plan § 2.11.  The LTPP falls within the definition of

Qualified Pension Plan.  <u>See</u> 1998 Plan § 2.41.

Section 4.1(a) of the 1996 Plan provides:[4]

> **4.1 Eligibility**
> **(a)   Service Plan**
>           Subject to the provisions set forth
> elsewhere in this Plan, each <u>Employee</u> who has
> reached [an age and length of service
> requirement] shall, if he or she leaves a
> Participating Company for any reason other than
> transfer to another Participating Company or
> transfer to, or immediate (i.e., on the next
> business day) employment or reemployment by, a
> company with which the Participating Companies
> have an Interchange Agreement if the provisions
> of such Interchange Agreement are applicable to
> such employee, be retired from active service
> and, upon such retirement, shall be granted a
> service pension, . . . .

1996 Plan § 4.1(a)  (emphasis added).

---

[4]Section 4.1(c) of the 1996 Plan provides for a
disability pension.  No plaintiff retired to a disability
pension.

The 1996 Plan's definitions of Employee and Qualified Pension Plan are identical to those in the 1998 Plan.  <u>See</u> 1996 Plan §§ 2.11, 2.36.  The 1996 Plan also provides:  "All Employees who have reached age 21, and whose Years of Service have been one year or more, shall be participants in the Pension Plan, . . . ."  <u>Id.</u> § 4.1(e).

Section 4.1(e) of the LTPP is titled "Pension Plan Participation" and provides:  "All employees who have reached age 21, and whose Years of Service have been one year or more, shall be participants in the Pension Plan, provided that no former non-vested Employee shall be a participant in the Plan unless and until he or she is subsequently reemployed with rights to participate in the Plan."

The LTPP's definition of employee is:

> Any individual . . . who receives a regular and stated compensation, other than a pension or retainer, from a Participating Company, and who is:
> (i) an Employee in a bargaining unit represented by a union, or
> (ii) a non-salaried Employee, or
>        * * *
> (iv) a salaried graded employee, or, . . . .

LTPP § 2.10.

The pertinent provisions of the 1998 Plan refer to a "participant who terminates employment."  Part of the definition of being a participant is being an employee.  Active participants

in the LTPP are excluded from the definition of employee. When
plaintiffs were transferred to occupational positions, they
became active participants in the LTPP and thus were excluded
from being participants in the LTMPP. Besides being a
participant as defined by the 1998 Plan, to qualify for TF
benefits, plaintiffs had to be eligible for a pension under
§ 4.1(a) of the 1996 Plan on the date employment was terminated.
The 1996 Plan limited service pension eligibility to employees.
Like the 1998 Plan, the 1996 Plan excluded active participants in
the LTPP from the definition of employee. It was within the
discretion of the EBC to construe the 1998 Plan and 1996 Plan
terms as requiring that a person be a salaried employee on the
date of retirement in order to qualify for benefits directly
under either plan. It was also within the EBC's discretion to
construe the LTPP as instead applying to persons who returned to
non-salaried, bargaining unit positions on their last date of
employment. The EBC did not act arbitrarily and capriciously by
so construing the plans.

Plaintiffs' contention that they were not covered by the
LTPP because they were not actually represented by Local 134 is
without merit. The EBC did not find that plaintiffs were covered
by the LTPP while still management employees. The EBC found that
they were covered by the LTPP after being transferred to the

- 16 -

occupational positions. At that point, plaintiffs were in
positions in which they were represented by Local 134.

Plaintiffs contend that they were not actually
transferred to occupational positions because they did not agree
to be so transferred. As to five of the plaintiffs, the evidence
only supports that they understood that, by electing the VTP,
they were agreeing to be transferred to an occupational position
on their last date of employment so that they could qualify for
the VTP. As to Franco and Olinger, there is no evidence that
they were so informed. However, the VTP as written was limited
to Customer Systems Engineers. There is no evidence showing that
a written or oral agreement existed offering BCS managers a
separate VTP package. The only VTP offer before the court is the
written one for Customer Systems Engineers. Five of the
plaintiffs understood they had to be transferred to occupational
positions to accept the VTP, Lucent actually transferred all the
plaintiffs to occupational positions, and Lucent management
officials also testified that a transfer to an occupational
position was necessary to accept the VTP. Therefore, the
evidence only supports that transferring to an occupational
position was a necessary condition for electing the VTP offer.
Even as to Franco and Olinger, it must be found that their
election of the VTP offer included an implicit agreement to be
transferred to an occupational position. Even if it could not be

considered to be by agreement, it is undisputed that Lucent did
actually transfer each of the plaintiffs to an occupational
position.  That none of the plaintiffs actually performed
occupational duties on their last dates of employment does not
mean they were not reclassified as occupational employees.  The
EBC did not act arbitrarily or capriciously in accepting the
employee change notices as showing plaintiffs had been
transferred to occupational positions.[5]

Plaintiffs contend that, even accepting that they were
transferred to occupational positions on their last date of
employment, they remained eligible for LTMPP pension benefits on
their date of retirement because any possible transfer to the
LTPP would not have become effective until a later date.  They
rely on § 4.7(c) of the 1996 Plan[6] which provides:

> If during any subsequent employment of an
> Employee in any Participating Company or any
> Interchange Company, the obligation with respect
> to the Employee's pension benefits has been

---

[5]If plaintiffs did not believe they should have been
reclassified, they could have requested (or possibly even
grieved) that Lucent correct or rescind the employee change
notices.  There is no evidence that plaintiffs even made such an
attempt, let alone that they succeeded in doing so.  Moreover,
had they successfully done so, they may have also had to withdraw
their election of VTP and return the termination payments they
received.

[6]Actually, plaintiffs cite § 4.6(c) of the 1998 Plan,
which is an identical provision.  However, the pertinent plan for
this argument would be the 1996 Plan that was in effect as of
plaintiffs' termination dates.

> transferred to the [LTPP] . . ., any eligibility
> for a pension hereunder shall cease.  The
> obligation with respect to an Employee's pension
> benefits shall be transferred to such other plan
> on the earlier of (1) January 1 of the year
> following the year which includes the date as of
> which the Employee's prior service with any
> Participating Company or any Interchange Company
> is included (e.g., after bridging of such prior
> service) in the Employee's Term of Employment for
> purposes of computation of pension under such
> other plan, or (2) the last day of the first
> month following the month in which the Employee
> dies or retires, if such death or retirement
> occurs after the date as of which the Employee's
> service with a Participating Company is included
> in the Employee's Term of Employment for purposes
> of computation of pension under such other plan.

Defendant contends that this provision is inapplicable to employees such as plaintiffs who transferred directly from a management position covered by the LTMPP to an occupational position covered by the LTPP.  Defendant contends that the provision's application is limited to employees who retire from a management position and are later rehired in an occupational position.  Defendant points to supporting deposition testimony of a manager in Lucent's pension policy and administration organization.  That construction of § 4.7(c) is consistent with its context and content.  The other subsections of § 4.7 concern employees who retire and then are rehired.  Moreover, § 4.7(c) itself refers to "eligibility" for a pension ceasing upon transfer to the LTPP.  Under the terms of the LTMPP, eligibility for a pension cannot exist prior to when an employee first

terminates employment.  See 1996 Plan § 4.1(a).  Section 4.7(c)
does not concern plaintiffs' situation of directly transferring
to a different position.  The EBC was not arbitrary and
capricious for failing to discuss or consider § 4.7(c)'s
application to plaintiff's situation.

Plaintiffs also contend that they cannot be considered to
have been transferred to the LTPP on their last date of
employment because they did not knowingly do so.  They contend
that they could not give up any rights under the LTMPP without
knowingly waiving or relinquishing such rights.  It is undisputed
that plaintiffs were never informed in advance and were
completely unaware that their last-day transfers to occupational
positions would transfer their pension benefits from the LTMPP to
the LTPP.  To the contrary, every indication they were given was
that, upon retirement, they would receive pension benefits under
the LTMPP.  Plaintiffs, however, cite no ERISA provision or case
law requiring that they knowingly waive their continued
participation in the LTMPP.  The LTMPP defines who is eligible
for service pension benefits.  If an employee takes action that
disqualifies him or her from receiving such benefits, the
employee is not eligible for benefits regardless of whether the
employee knew of the effect on pension benefits.[7]  To hold

_____

[7]The cases cited by plaintiffs are inapposite.  Those
cases concern written waivers (settlements or releases) giving up

otherwise would mean that any employee who leaves a position

covered by a pension plan, whether because of a voluntary

transfer, a voluntary resignation, or an involuntary termination,

transfer, or demotion, would still be entitled to benefits under

that plan unless the employee was actually aware of possible

effects on his or her pension benefits.  Moreover, excepting

plaintiffs from the terms of the LTMPP would go against the rule

that modifications to the terms of an ERISA plan must be in

writing and in accordance with the plan's provisions for

amendments.  See Downs v. World Color Press, 214 F.3d 802, 805

(7th Cir. 2000).  Plaintiffs do not point to a sufficient legal

basis for ignoring the eligibility requirements that they did not

satisfy.[8]

---

benefits that the employee was (or arguably was) eligible for.
See Morais v. Central Beverage  Corp. Union Employees'
Supplemental Retirement Plan, 167 F.3d 709 (1st Cir. 1999);
Carrabba v. Randalls Food Markets, Inc., 145 F. Supp. 2d 763,
771-72 (N.D. Tex. 2000), aff'd, 252 F.3d 721 (5th Cir.), cert.
denied, 122 S. Ct. 463 (2001).  See also Lynn v. CSX
Transportation, Inc., 84 F.3d 970, 975-77 (7th Cir. 1996).

        [8]Even if plaintiffs' contention regarding the need for a
knowing relinquishment of LTMPP coverage had merit, it would not
necessarily mean they were entitled to TF benefits.  At the time
plaintiffs elected the VTP, the difference between monthly
pension benefits under the LTMPP and LTPP was miniscule.  There
is nothing to indicate plaintiffs would have declined the VTP had
they known that accepting it would transfer their pension
benefits to the LTPP.  Even if it were held that plaintiffs
should now be given the opportunity to reconsider their election
in light of knowing the actual consequences, they should not
be given the opportunity to both keep the VTP and receive
TF benefits.  Instead, they would have to choose between

Last, plaintiffs contend[9] that the EBC did not provide

them with a full and fair review as required by 29 U.S.C.

§ 1133(2), which provides:  "In accordance with regulations of

the Secretary, every employee benefit plan shall afford a

reasonable opportunity to any participant whose claim for

benefits has been denied for a full and fair review by the

appropriate named fiduciary of the decision denying the claim."

As to full and fair review, regulations provide:

> . . . [T]he claims procedures of a plan will
> not be deemed to provide a claimant with a
> reasonable opportunity for a full and fair review
> of a claim and adverse benefit determination
> unless the claims procedures--
> (i) Provide claimants at least 60 days
> following receipt of a notification of an adverse
> benefit determination within which to appeal the
> determination;
> (ii) Provide claimants the opportunity to
> submit written comments, documents, records, and
> other information relating to the claim for
> benefits;
> (iii) Provide that a claimant shall be
> provided, upon request and free of charge,
> reasonable access to, and copies of, all
> documents, records, and other information
> relevant to the claimant's claim for benefits.
> Whether a document, record, or other information

_____

(a) returning to the LTMPP and thus foregoing (that is returning)
the VTP amounts already paid while being entitled to TF monthly
benefits or (b) remaining in the LTPP and thus being able to
retain the VTP amounts already paid, but not qualifying for TF
benefits.

[9]Defendant argues this contention is waived because not
alleged in the complaint.  Since this contention otherwise lacks
merit, it is unnecessary to determine if it is waived or if
plaintiffs would be entitled to amend their complaint.

is relevant to a claim for benefits shall be
determined by reference to paragraph (m)(8) of
this section;
        (iv) Provide for a review that takes into
account all comments, documents, records, and
other information submitted by the claimant
relating to the claim, without regard to whether
such information was submitted or considered in
the initial benefit determination.

29 C.F.R. § 2560.503-1(h)(2).

        As to the review committee's decision, regulations

provide:

        The plan administrator shall provide a
claimant with written or electronic notification
of a plan's determination on review. . . . In
the case of an adverse benefit determination, the
notification shall set forth, in a manner
calculated to be understood by the claimant--
        (1) The specific reason or reasons for the
adverse determination;
        (2) Reference to the specific plan
provisions on which the benefit determination is
based;
        (3) A statement that the claimant is
entitled to receive, upon request and free of
charge, reasonable access to, and copies of, all
documents, records, and other information
relevant to the claimant's claim for benefits.
Whether a document, record, or other information
is relevant to a claim for benefits shall be
determined by reference to paragraph (m)(8) of
this section;
        (4) A statement describing any voluntary
appeal procedures offered by the plan and the
claimant's right to obtain the information about
such procedures described in paragraph (c)(3)(iv)
of this section, and a statement of the
claimant's right to bring an action under section
502(a) of the Act; . . . .

Id. § 2560.503-1(j).

Plaintiffs contend the review proceedings were deficient because (a) the same person who drafted the initial decision drafted the letters informing plaintiffs their appeals had been denied; (b) plaintiffs were not interviewed or called to testify; and (c) there is no indication the EBC considered certain evidence, that is the evidence that they never performed the functions of occupational employees and were initially paid benefits from the LTMPP.

A full and fair review does not necessitate that live testimony be taken. Brown v. Retirement Committee of Briggs & Stratton Retirement Plan, 797 F.2d 521, 534 (7th Cir. 1986), cert. denied, 479 U.S. 1094 (1987); Dabertin v. HCR Manor Care, Inc., 177 F. Supp. 2d 829, 848 (N.D. Ill. 2001). See also 29 C.F.R. § 2560.503-1(h)(2)(ii). There is no contention by plaintiffs that they were precluded from presenting adequate written submissions. Also, the provision for a two-step decisionmaking process does not require that different persons make the decision at each step. Brown, 797 F.2d at 534. Moreover, the actual decisionmakers at each step were different. The person that plaintiffs complain participated at both steps was someone who drafted memoranda to the decisionmakers and reported the decisions to plaintiffs. She was not the actual decisionmaker.

The Seventh Circuit has stated that:

> The persistent core requirements of review
> intended to be full and fair include knowing what
> evidence the decision-maker relied upon, having
> an opportunity to address the accuracy and
> reliability of that evidence, and having the
> decision-maker consider the evidence presented by
> both parties prior to reaching and rendering his
> decision.

Brown, 797 F.2d at 534 (quoting Grossmuller v. International
Union, United Automobile, Aerospace & Agricultural Implement
Workers of America Local 813, 715 F.2d 853, 858 n.5 (3d Cir.
1983)). More recently, the Seventh Circuit has clarified that
the review committee needs to provide "specific reasons" for its
decision, "but that is not the same thing as the reasoning behind
the reasons, in this case the interpretive process that generated
the reason for the denial." Gallo, 102 F.3d at 922.

The minutes of the EBC meeting, as well as the letters
sent to plaintiffs informing them of the EBC's decisions, state
that the EBC "based its decision on a full review of the facts of
the case, including all information provided, as well as the
provisions of the LTPP and the LTMPP." The minutes do not
specifically refer to plaintiffs initially being paid by the
LTMPP, their continued performance of management duties, or their
being processed as LTMPP participants. As discussed above, the
key fact is that plaintiffs were reclassified as occupational
employees. The failure to explicitly refer to the additional

facts in the decision or minutes is not a significant omission.
In any event, plaintiffs also provide the memorandum that staff
submitted to the EBC.  See Pl. Exh. 19.  That memorandum shows
that the facts cited by plaintiff were specifically recited to
the EBC even if they had not directly read plaintiffs'
submissions.  The record does not support that the EBC failed to
adequately consider any material fact.

For the foregoing reasons, the undisputed facts show that
the denial of TF's benefits was not arbitrary or capricious.
Defendants' motion for summary judgment will be granted and
plaintiffs' motion for summary judgment will be denied.

IT IS THEREFORE ORDERED that plaintiffs' motion for
summary judgment [16-1] is denied.  Defendants' motion for
summary judgment [13-1] is granted.  The Clerk of the Court is
directed to enter judgment in favor of defendants and against
plaintiffs dismissing plaintiffs' causes of action with
prejudice.


ENTER:

_William T. Hart_____
UNITED STATES DISTRICT JUDGE

DATED:  APRIL  25  , 2002